Safety Authority Incorporated et al. I think you should stay right there. I'm just going to make an executive decision on that. Any objection? No objection. Oh well, that's important. All right. Yeah, Mr. Sinzak, Sinzak, I mispronounced your name, sorry, Sinzak. I'm used to it. Thank you, Your Honor. May it please the Court, Jerry Sinzak, appearing on behalf of the Federal Trade Commission. The District Court's injunction should be set aside. The Court enjoined all of the approximately 70 rules the FTC promulgated on the ground that the FTC's 14-day comment period violated the APA. The Court mistakenly believed that the APA required a 30-day comment period absent good cause. It does not, and the Court plainly erred in concluding otherwise. Moreover, the 14-day comment period the FTC chose here was entirely reasonable under the circumstances and has caused plaintiffs no prejudice. The 14-day period was necessitated by the requirement Congress imposed that the agency reach a final decision on proposed rules within 60 days, and the agency deemed it necessary to use 45 or 46 of those days to do the substantial review and analysis that it is required to do under the statute in approving rules. Moreover, the 14-day period, of course, took account of the lengthy period of time that the authority provided with an iterative notice and comment period before it submitted the proposed rules to the Commission and before the Commission published those rules. Plaintiffs do not dispute, in fact, that they had ample notice of the rules ahead of time and they'd be hard-pressed to do so. At least one member of the plaintiffs' group was part of the committee that drafted the rules in the first place and others had participated in working drafts and so forth, and they don't dispute. And then as a result, I think it's not surprising that they haven't shown any prejudice. Just a quick housekeeping matter. You're not joining in the horse-racing integrity's argument on standing. With respect to the comment period rule, we have not joined them. They do raise questions about whether they've made the appropriate showing, but we haven't made that standing argument with respect to the comment period rules. Okay. What about standing with respect to each of the three challenged rules? Right. So with respect to the covered horse rule, we agree with the authority that plaintiffs haven't shown that they actually have a horse or own a horse that would be covered by the extraneous material that the district court disapproved of. So we agree with the authority on that. We also agree and have argued that there was no standing with respect to the seizure rule because they haven't shown that they face any imminent threat of seizure by the authority or the commission. And so we agree on those two points. We haven't raised standing with respect to the assessment methodology rule, but as the authority has. Okay. All right. Thanks. And I'm happy to discuss with respect to the substance of those. No, go ahead, please. I just wanted to make sure I understood. Yes, that's right. So, you know, for the reasons I previously iterated, the district court was incorrect on the 14-day common period as this court itself found in granting a stay. And having answered questions on those, I think the court also erred with respect to finding that the seizure rule, 8400A2, was inconsistent with the act. I think even plaintiffs themselves on the merits aren't challenging that that is a power that state racing commissions possess, and therefore it was justified and inconsistent with the act in the sense that the act allows the commission to grant seizure. Could you remind me which of these rules is currently under reconsideration? I may have not stated that correctly, but being rethought. Right. So the definition of covered horse, I believe, is at the stage where the authority is working on a modification. I don't believe they've submitted it to the FTC yet. With respect to the access rule, there are kind of a couple components of that in the district court's decision. One deals with the power to seize property. I think that is before this court. There's no modification. There was a separate issue about the regulation reads that owners of horses and providers of veterinary services are also covered. Let me just take a step back. The statutory provision provides access to books, records, et cetera, of covered persons. The regulation, as it was initially enacted, says access to covered persons, but also access to the books, records, et cetera, of owners of horses and providers of service. Now, in the statute, there's a limitation that says, you know, the property that's being accessed has to relate to the training of horses and the ownership of horses and services provided. The regulation doesn't include that limitation with respect to the owners of horses. The FTC did not intend that limitation to be left out, so it leaves the impression that the authority could search the property of an owner of a horse, you know, could search their house in Florida if it has nothing to do with, you know, horse racing. That's not what the FTC intended. And so there has been a modification that makes clear that that limitation that's- What's the status of the modification? It's been proposed to the-the FTC has actually published the proposed rule. It did so, I believe, in July 26th, I believe is the date, but in late July. So if the FTC approves that modification, it will go into effect September 26th or thereabouts. September 26th. Exactly, yes. Right. 60 days. At least, you know, no later than 60 days from the proposal. So those have been published and made-and will go into effect. So the only really two substantive issues here, substantive regulations at issue, are the power to seize contraband or suspect a contraband. That's Rule 8400A2, and I think plaintiffs even concede that that's consistent with the Act. They certainly haven't made any other argument. And then the other substantive rule that's before this Court is the assessment methodology rule, and the District Court found that that was inconsistent with the Act because it wasn't based purely or solely on projected racing starts. And that was error. In fact, the Commission's regulation is consistent with the Act. It is based on projected racing starts. Now, it does make an adjustment. It doesn't weight all projected racing starts equally. It weights them according to purse size, where if your projected racing starts in states where purses are higher per racing start will be weighted more in the allocation methodology, and in states where purses are lower they will be given lesser weight. But projected racing starts remain the foundation of the formula. It's just they're not all weighted equally. And nothing in the Act requires them to be weighted equally, and as courts have made clear. Just for my purposes of understanding the way the Act works, when the FTC is reviewing an assessment methodology rule like this one, it's reviewing it for consistency with the Act, as the statute says. Where is it looking in the Act for sort of the benchmarks of consistency, if that makes sense? Where is it looking? It goes kind of regulation by regulation. Right, but what is it looking to in the statute for guidance on what, you know, how can it tell if it's consistent with the Act, I guess? Well, so, for example, for the assessment methodology, the Act specifies that the assessment methodology has to be based on the budget of the agency plus projected racing starts and then taking account of other revenue that the commission may generate. That's in the statute. That's in the statute. So, really, I think that, and then the statute also mentions that other points, that the allocation has to be equitable and proportionate and so forth. So it looks at those sort of standards and requirements, and here it's satisfied those. It shows a methodology that is based on projected racing starts, and then it went further to make an adjustment to make sure it was equitable in allocating the cost across states. Okay. Thank you. If Your Honors have no further questions. Thank you. Thank you. Let's see. Ms. Paterno? Or Mr. Paterno? Sorry. Oh, I thought it said Lisa. It doesn't. How do you pronounce your first name? Lyde. Lyde. Mr. Paterno. Thank you, Judge Duggan. Go ahead. May it please the Court. Lyde Paterno for the authority defendants. Your Honor, the FTC attorney went into some detail about the notice and comment claim, so I'm happy to address the other three rules that were not covered by this Court's stay order to explain why the district court's injunction should be reversed in its entirety. On the assessment methodology, Your Honor, the plaintiffs have never shown that they would suffer any injury that is even concrete, let alone irreparable. They've never disputed. We've said this many times with figures in the record that they would, in fact, be worse off under their reading of the statute if they were to prevail in their challenge, and they've never challenged that assertion. And so it's our view, Your Honor, that there's not even standing to raise the assessment methodology, but even if there were standing, there's certainly not irreparable harm for that reason, but also because we're just talking about money. So if there ever were some sort of misallocation, then certainly it could be adjusted on the back end. If the Court were to go to the merits on that claim, we think that, as the FTC explained, we think that the assessment methodology is consistent with the Act. It conforms to the Act requirement that the rule that was approved by the FTC define or determine each state's proportionate share of the HISA programs based on racing starts that, as the FTC explained, are weighted by purse considerations. Of course, the plaintiffs insist that the statutory language forecloses any consideration of anything except for a pure number of racing starts, but we think that that's not – we think we have the better reading of that for a few reasons, Your Honor, and this goes to your question of what the FTC looks to determine if it's consistent with. One is just the text of the statute. It requires – What section – I'm sorry. What section are you looking at? I've just got the statute. Of the statute. This is 3052F, Your Honor. The funding – Section. Okay. 3052FC in particular talks about the calculation that – Did you say F or S? F as in frog. Okay. Annual calculation of amounts required. That's right. And so in that provision, Your Honors, the FTC has to approve a rule that determines each state's And so in at least two ways we think that supports consideration of purse factors in the formula. One is that, of course, the language is based on. It's not based solely on or exclusively on. But second, it requires that the shares be proportionate. And then in another provision, this is F3B, further down in that same provision, the authority has to make sure the allocations are equitable. And so we think just on the text itself, we have the better reading. And then, of course, in our briefs and in the FTC's brief, we included several cases that discuss language, admittedly, obviously, in other statutes, but in the agency action context where courts have looked at the language based on and have said over and over again that based on does not necessarily mean based solely on, but as long as it's – or the starting point, then that complies with the statute. And we think here that there's really no dispute that the formula that was approved by the FTC uses racing starts as the foundation and as the starting point. And then third, Your Honors, the plaintiffs have really never acknowledged the absurd results that would occur under their reading of the statute. And this was in the FTC order itself. And then in the briefs, the states like West Virginia and Louisiana, the plaintiffs here, would end up paying more, their share or covered persons in those states would pay more if there were a formula based on pure racing starts than a state like Kentucky, even though Kentucky has – I think the language in the FTC order says their revenues dwarf the revenue from a state like West Virginia. And so for those three reasons, Your Honor, we think we have the better reading, but certainly the statute doesn't foreclose that. In your view, this language you're reading, I'm trying to zero in on what's the disagreement between the parties on the language. Is it only based on or is it also what projected amount means? Well, I think you're right, Your Honor, to look to all of those, and we think all of those are clues that the agency could consider things in addition – could consider purse considerations in addition to racing starts as long as racing starts is the foundation. But I understand the other side to take the view that really based on is the operative language and based on means just the factor that's listed there. So if – I don't want to put words in your mouth. In your view, this language gave the authority some leeway into how it figured out what based on the projected amount of covered racing starts means? Well, I think in order to be consistent with the acts, the authority needed to propose a provision and the FTC needed to approve the formula that would be based on racing starts and would be proportionate and equitable, which are the factors listed there. But the authority could have chosen any number of ways of doing that? Your Honor, conceivably there could be some other formulations as long as the racing starts were still the foundation and the starting point, and that's the language that comes from the various cases we cite. So when the FTC is reviewing this particular rule, it's looking to this language be based on the projected amount and all the surrounding language to figure out whether the rule is consistent with the act. That's right, Your Honor. It looks to the text of the act, the context, as you said, how it not just this one provision but how all the provisions work together. And then I do think the kind of real – the absurd results that the plaintiffs ignore, I think gives some meat to the bone of what something like proportionate and equitable means in this context. And then, Your Honor, if I can move to the search and seizure rule. Plaintiffs there really have taken no issue with the many cases we cite in our briefs that explain that a seizure of contraband is a well-recognized power that state racing commissions have long exercised. They really have no response on that, and so we think they've conceded it. On the search power, this is provision A of Rule 8400, the plaintiffs want to read the proposed rule language in a vacuum and not look at the order from the FTC that approved it. But, of course, as the FTC attorney explained, the FTC's order explains that even though there's some difference in the detail on the language between the act and the rule that was proposed, that functionally there's no difference, that substantively they're the same. And so we think you have to look at that proposed language in the context, obviously, of the rule, without which the proposed rule has – without the order, excuse me, the proposed rule has no legal basis, no authority. As we talked about in the last appeal, obviously the FTC order is the thing that gives the proposed rule any sort of legal effect. And so when you look at that proposed rule in the context of the order, we think that really the language of the rule and the act become coterminous. But even if there's any doubt on that, plaintiffs have not shown any irreparable harm. They haven't shown that they intend to carry out any sort of functions that would implicate these rules. The rules really are more about the anti-doping and medication control rules that will not be approved until any time before at least 2023. And the authority has represented publicly and in these briefs that it doesn't intend to carry these out. If I could make one last point, Your Honor, about the covered horse definition. The authority has actually submitted, I think it was on August 17th, submitted to the FTC a proposed modification that would map the definition of a covered horse onto the definition of the act exactly. Have you submitted that to the panel as a 28-J, if that's appropriate? It's in the declarations, Your Honor, say that the authority, I think the time, as you know, this was all briefed very quickly. No, that's true. I think the declarations represent that the authority was about to propose. Correct that question. We just got the briefing in this case. Yeah, that's right. Okay, thank you. It's been a busy few weeks. It has been, I'll bet. Yeah, thank you. And we appreciate all the briefing done under such short time constraints. Thank you. Thank you. Mr. McPhee. Good morning, and may it please the Court. My name is Shane McPhee. I'm from the Louisiana Attorney General's Office. For 15 minutes today, I want to talk about the justiciability issues and the likelihood of success on the merits issue, and I can touch on the irreparable harm. And then my co-counsel, Mr. John Duville, will discuss. He knows the ins and outs of the horse racing industry, and he can talk about the balance of the equities and the public interests and the irreparable harm to the horse racing industry. I'll start with justiciability. The mootness, if this Court likes what it heard in the previous case and agrees with the appellants, it can kill two birds with one stone. If HISA is unconstitutional, then the FTC's rules are void ab initio, and there's no need to address the issues in this case. I want to address standing. As you pointed out, Judge Duncan, it appears the FTC is not contesting standing on at least part of the issues, the 14-day rule, and I'll say that all the courts that have addressed these HISA arguments, none of them have agreed with the authorities' standing arguments. And it's my privilege this morning to represent two sovereign clients, including the State of Louisiana, and Louisiana has a sovereign interest in promulgating its own rules and having those rules enforced. And Louisiana has passed a law that gives regulation authority to its racetrack commission over all matters regarding horse track racing. And the state, of course, has an interest in seeing that delegation of authority come to fruition, come to pass. When Congress passed HISA, it said it gave express preemption power to the authority and to FTC, so any of its rules that it promulgates expressly preempts my client's sovereign lawmaking ability. And that injures my client for standing purposes for every single rule that it passes. So you're saying that once the FTC approves the rule, it wipes out any conflicting state rule, I suppose? That's right. And so are you saying that it doesn't matter that, say, I mean, so the three rules that we're focusing on here, covered horse, the access slash seizure, and then something else, assessment methodology, you're saying that it doesn't matter whether there's any, I guess, live conflict with respect to that rule, say covered horses? That's exactly right, Your Honor. Louisiana wants to regulate horse racing itself. It's passed a law to that effect. And now, whether or not it's going to, whether or not there's a live controversy on the seizure issue or something, Louisiana loses the powers, and that is a standing entry. What about the assessment methodology? The argument there is that your proposed reading of the rule would actually harm Louisiana and West Virginia, as opposed to the rule which would wait, you know, Kentucky would have to pay more, I suppose? Again, I appreciate that the authority thinks that its rules are better for Louisiana than Louisiana's rules, but Louisiana has its own assessment and taxation methodology, and their, whatever it is, their rules, when they promulgate them, they injure my clients and their sovereign interests. And, of course, you only need one plaintiff to have standing. And so I do think that there's a live controversy on everything. If I could, I'd like to turn now to the likelihood of success in the merits, and particularly the 14-day ruling by the district court. I know that this court stayed that portion of its injunction, and Judge Enkelhardt, I know that you were on that panel, but I think it's worth a second look. The district court, I don't read the district court's opinion as saying that 5 U.S.C. section 553D sets a 30-day minimum requirement. What I see the district court saying is that the statute, or the APA, requires notice and comment. And many cases have said that you need adequate notice and comment. I would at least hope that we all agree that if there was, if they tried to have one minute of notice and comment, that wouldn't be adequate as a matter of law, and then it would have to, they'd have to show good cause in order to have a one-minute period, or even a one-day period. I think this is really a line-drawing question, and the APA is silent on how much is necessary. And that actually makes a lot of sense, because some rules are going to be bigger or smaller than other ones. Some rules are going to be more important or less important. The cases that the authority and the FTC rely on, where they say, oh, 7 days is enough, or 14 days is enough, those were minor modifications to a very well-regulated industry. Here we have something that's never been done before. You have a takeover of an industry that's been committed to the regulation of the states since the time of the founding. This is very new, and you would think that the 30 days or 60 days that are normally provided would be especially important here. It's sad that they only gave 14. Now, that does require us to move over to the, is there good cause? So I think as a matter of law, 14 days just wasn't adequate notice and comment period. But, of course, they can show, is there a good cause? And I just want to point out that this court has, what the FTC says is, well, Congress gave us a quick deadline. We only had 60 days. That wasn't enough. We needed to keep 45 of them for ourselves. But this court has actually said, has held, that that's not a good excuse, that that's not good cause. And I'm sorry, this isn't in our brief. It's a very short, we had a very short briefing deadline. But. Well, please do, I mean, please do submit a 28-J so that your co-counsel, I mean, your opposing counsel will have a chance to respond. Sure, yeah, of course. But, for example, footnote 12 of a case called City of Seabrook, Texas v. U.S. EPA says an agency, quote, must follow APA procedures even if violation of statutory deadlines results. And. Well, I guess from my perspective, so you're saying there's no hard and fast rule. There's no, you know, required 30 days. The district court, I think, made a mistake on that point. How is a court of appeals supposed to assess whether there's been sufficient notice and comment? I get your argument that this is a massive thing and that, you know, that's just not enough. But, I mean, how are we supposed, how are we supposed to draw lines on this? We're supposed to look in this particular case and see whether, you know, whether there was enough? It just seems a little bit amorphous to me. I think the APA requires adequate notice and comment and whether or not the FTC gave adequate notice and comment is a question of law. And I think that this court reviews that question de novo, subject, of course, to the good cause exception and the prejudice problem. So I think there's three questions. First is a question of law. Was adequate notice and comment given? If they gave one minute, as a matter of law, I think this court can say, no, you have to show good cause. Second, the court looks to see if there has been good cause. And I just want to emphasize in another case, this court said that where an agency blows off other statutory deadlines, then it's especially skeptical of the idea that it needs to show good cause or that the short statutory deadline can count as good cause. What about prejudice? You mentioned prejudice in the last part. What's prejudice here? So that does take us to the third prong, or the third question, which is prejudice. And here I think that the fact that we're here, the fact that you've heard my opposing counsel concede on numerous provisions, that, oh, yeah, that's not quite what we meant to say, whoops, and so they have to go back and they're submitting new rulemaking authorities. And just again, I think that you can look to the entire new regulatory scheme. 14 days just wasn't enough. And if you go look at the FTC's rulings on each one of the rule series they approved, in each one they say, wow, everybody here is asking for more time, but we only have 60 days so we can't do that. But, again, this court has said that that's not good cause. That's not a good excuse. And so I really think that in light of the gravity of the new regulations over an entire industry, that this court really should take a close look at what the APA requires and look at that 14-day for cause. If I could just turn quickly to the three rules that the court joined specifically. I just want to point out that Rule 2010, you heard the FTC agree that Provisions 3 and 4 exceeded the definition, the statutory definition of a covered horse. They're not contesting that. They accept Page 24 of the Authority's Brief Note 4, accepts the statutory definition of a covered horse. So I think that they just concede that rule and that the injunction should stay in place. They're saying, as I understood, they're saying it's under revision right now. Is that right? Yes. Yeah. So there's no reason not to keep that injunction in place. I think their only real challenge to that, again, is standing. But, again, my client is injured by all of the rules. Rule 8400, again, you hear them say, yeah, we didn't mean to go so broad. The rule as it is seems to suggest that they have unfettered access to anybody's books associated or houses associated with the horse racing industry, and that's too far. They do contest, though, the seizure power, and they seem to think that we've conceded that. If you look at the record, like ROA 1028, here's what the Texas Commission says. This is from the FTC's order. The Texas Commission says these seizures are permitted outside the constitutional limits of the Fourth Amendment and one's reasonable expectation to privacy. Again, the Oklahoma Commission at ROA 1029 says that the powers proposed by Rule 8400 far exceed any regulatory authority it has per Oklahoma statute. The Minnesota Commission, again, makes similar claims. You have a lot of racetrack commissions. These are commenters' objections to the proposed rule? That's correct. Apologies, Your Honor. Yes. And the FTC notes them. Opposing counsel would make it sound as though everybody sort of agrees that they have the seizure power, but that is not reflected by the record and is not reflected by the comments in what the FTC said in its order approving this rule. Finally, I'd just like to turn to Rule 8510, which is the assessment, and they say a lot about the words based on. If you listen very closely, though, what they're saying is that based on is ambiguous, and so because it's ambiguous, the agency deserves Chevron deference on the meaning of based on. But I actually don't think that this provision is ambiguous in the context of another provision of the statute. If you skip down just a little further to Section 3052F3A. So Section 3052F3A. Assessment and collection of fees by the authority calculation? Yes. This is what happens if a state racing commission does not elect to remit fees, and it says, quote, the authority shall not less frequently than monthly calculate the applicable fee per racing start multiplied by the number of racing starts in the state during the preceding month. And so if you take the statute as a whole, you can see that they look at this again somewhere else. It would be kind of odd to have one calculation for states that elect to remit their fees and another one for states that don't. And so I think that the word based on, its interpretation of the word based on, warrants no deference in this case because it's not ambiguous in light of the statute as a whole. Okay. Just, again, I think that this has caused a lot of havoc in the industry. These rules that the FTC didn't even pass, or didn't even promulgate a rule series for the protection of the horses for the anti-doping. And as Congress commanded, and I think that you're seeing a lot of the fallout of what's happening here in this litigation. But the anti-doping rules have been delayed. Is that what I'm hearing? Correct. Yes. Until January 23. January 23. Yeah. So they're not complying with their statutory deadlines. They're rolling out these rules piecemeal. It's causing a lot of havoc. And any time that they pass a law, or they promulgate a rule that enjoins one of my client's statutes, that causes irreparable injury to the state. And so appellees respectfully ask the court to confirm the injunction. Thank you, Mr. McPhee. We'll hear from, well, now I'm going to mispronounce this name too. We'll hear from Mr. Duval. Duval. Duval. Really? Duval. L-H. Okay. We're going to debate how to pronounce your name, but I don't want to take away your time. Please proceed. May I please the court? With respect to the 14-day ADA that the district court talked about, I would just note one thing for the record. You have the authority that is extended the time period for medications to go into effect, even though Congress said it was supposed to go into effect on July 1st. It extends it to January. The crop rule was supposed to go into effect on July 1st with a specific crop, yet they extend that period of time for that crop to come into place. The horseshoe rule, as you talked about, farriers ordered horseshoes well in advance, yet they changed that rule at the ninth hour. So to sit here and say 14 days is sufficient time for an industry that is being regulated for the first time in this mass period of time is not fair and equitable. But let's talk about what they have done and what we're dealing with. With respect to the irreparable harm, it is very interesting to note that when it comes to the covered horse, they skid by it and they say that there's something taking place with the modification. But at the time that the preliminary junction was granted, the covered horse definition by what was put in place by the rule of 2010 was in place. And what is important with that is it expanded what was in the original act. That's what the district court properly gathered. Specifically, it dealt with the expansion to say that a covered horse includes those horses that are nominated for a specific type event. In this case, it would be such as Breeders' Cup. In Louisiana, it would be fraternities and things of that nature. That's what the breeders do in connection with selling their horses or having the opportunity to sell them. And it's important for various reasons because the covered persons includes owners, trainers, jockeys, veterinarians, breeders. Why do you include breeders if there's no rules or regulations to breeders? But there is a rule of regulation to breeders. And the rule of regulation to breeders says that you are a covered horse under the expansion of definition that they gave in 2010 to mean that when that horse is born and foaled, if that breeder owner nominates that horse for Breeders' Cup or a specific type of race that you're only eligible to run in that race by being nominated, that creates that horse to be subject to covered horses. That also subjects the breeder and the owner. What does that do? That brings every farm in the United States, in Louisiana, in West Virginia, in Kentucky into play. So now the covered horses has been expanded exponentially. They rave about the fact that you've got 27,000 people and 28,000 horses signed up. Here's a whole other group of horses that we're dealing with and a whole other group of breeders. Then you deal with the search and seizure. When you open up these farms, now you're opening up the Armageddon of our industry. If the breeders are not allowed to breed their horses and sell their horses and are subject to rules and regulations that allow improper seizures, searches, looking at papers, records, books, everything that you sell a horse on depends upon the manner and method in which you present the horse for sale. Mr. Ouvillier, I thought that they said the definition of covered horses was under reconsideration. I haven't seen it. I was going to ask you if it had been published, and if so, would it solve the problem. The only thing I've seen is associated with the seizure part, the search part, but nothing with respect to the covered horse. And then you look at the pattern and method in which they've acted. The district court issued a preliminary injunction, put it in place, said that Hisa was enjoined. Yet they looked it straight in the face in California and had a steward that Hisa commandeered, for lack of a better word, because they only have five employees. So they take state assets, including stewards, to promulgate and use their rules. They take a jockey's action in California, while the preliminary injunction's in place, a member of the guard, and holds that person responsible for violating Hisa. Yet the government, or Hisa, says specifically the California rule was more severe than the Hisa rule. Yet the jockey got written up because of a Hisa violation, which is in direct conflict with the preliminary injunction stopped from taking place. But don't stop there. Let's watch what took place in Ohio. In Ohio, the same stewards, stewards that are at a racetrack, decide that their interpretation of the rules and regulations can change the order of a race under the parimutuel rule, so that a horse that placed second is now placed out because of violation of a rip rule by a jockey. What did that do? That changed the better's ability to receive the money for the horse who had properly run in. The disqualification caused another horse to go up. So you had a parimutuel rule that had to be doubly paid by racetrack. Oh, and the racetrack is a covered person as well. So what did they do? Two days later, they come out and say, oh, we made a mistake. Well, who's responsible for the steward's actions? Hisa is. And how so? Because Hisa commandeers all the state employees, the police powers, the state agencies, everything. So what do the state racetracks and the associations and commissions have to do? They have to make that determination as to how they're going to use it and not use it. But the biggest thing is, Your Honor, is by their pattern and what they've done, with respect to violating the preliminary injunction with the jockey, and the improper use of their stewards and disqualifications, there's no doubt that their harm that they're going to continue to impose on people is going to include the largest horse sale in the world, which is going to take place in two weeks, and their ability to issue cease and desist orders against breeders and owners of those horses because they haven't signed up on Hisa. Counsel, thank you for your argument. And we will hear rebuttal from Mr. Sinzak. Thank you, Your Honor. I will say, without cutting into your time, we're hearing a lot of talk about rules being revised and reconsidered and everything. And I know the briefing has taken place under short time constraints. I appreciate that. The panel would appreciate updates on rule modifications and all that. Sure. Please go ahead. Okay. With respect to the points raised by the other side, I just want to be clear on one point, and that is that we do not agree that if this court were to hold the act unconstitutional, that would necessarily mean that the regulations are void ab initio. The question of remedy, of course, hasn't been briefed in that case, and it hasn't been briefed here, so that would be something. With respect to notice and comment, I think the 14-day comment period, plaintiffs agree that the test is not the one laid out by the district court, but rather whether they're adequate. And I think what's telling here is plaintiffs, again, don't even address the point that we've made and the authority has made, that they had ample notice, in fact, participated in the development of these rules. They pretend as if they sprang out of nowhere, when in fact they had months of notice prior to the publication. And I think also that goes to show that another example of why they're adequate is that there's no showing of prejudice here. Plaintiffs haven't identified any comments they would have made or any information they would have provided had the comment period been 16 days longer, and now we're even months later and they still haven't done so. With respect to the seizure power, they note that some commenters objected to it, but I think the point that we've made and the point the commission made in its order is that no state racing commission has claimed that this isn't a power they possess, and the FTC and the authority in their briefs provide a litany of state racing commission statutes that provide this type of seizure power. And so it's clearly one that state racing commissions possess and therefore was authorized by the Act. And this is a minor point. I think plaintiffs noted with respect to the covered horse rule, which is under modification, as Erona has pointed out. It has, I guess, been submitted to the FTC on August 17th. But that rule was published by the authority, just like the other rules were previously published by the authority ahead of time on their website and comment was solicited. So plaintiffs have had notice of that covered horse rule as well. So those are the only points I had. If Your Honor has any further questions. Okay. No further questions. Thank you, counsel. The case is under submission. And this panel will stand in recess until tomorrow morning at 9 a.m. Thank you.